**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

October 28, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Williams v. Commissioner of the Social Security Administration*
Civil No. 8:25-cv-03926-JMC

Dear Counsel:

Keiba C. Williams ("Plaintiff") petitioned this Court on December 1, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 11, 17, 20). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the case and remand to the SSA for further consideration for the reasons explained below.

## I. Procedural Background

On April 30, 2016, Plaintiff filed a Title XVI application for supplemental security income. (Tr 296-304).[1] Plaintiff then filed a Title II application for a period of disability and disability insurance benefits on May 20, 2016. (Tr. 292-295).[2] In both applications, Plaintiff alleges disability beginning on September 1, 2015. *Id.* at 292, 296. The SSA initially denied her applications on October 17, 2016, (Tr. 106-107), and upon reconsideration on February 7, 2017. (Tr. 165-172, 179-182). Thereafter, on February 25, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 183-190). On March 6, 2019, ALJ Theodore Grippo conducted a video hearing where Plaintiff appeared and testified with counsel. (Tr. 35-63). Concluding that Plaintiff was not under disability from September 6, 2015 through April 10, 2019, the date of his decision, ALJ Grippo denied Plaintiff's claim. (Tr. 142-160). Thereafter, on February 20, 2020, the Appeals Counsel remanded. (Tr. 161-164)

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 10) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

On June 19, 2020, ALJ Grippo conducted another hearing, (Tr. 64-81), and subsequently denied Plaintiff's applications on June 26, 2020. (Tr. 12-34). On October 22, 2020, the Appeals Counsel denied review, (Tr. 1-6), but the case was remanded by this Court. (Tr. 1080-94).

On March 16, 2023, ALJ M. Krasnow conducted a hearing, (Tr. 1003-42), and denied Plaintiff's applications on June 6, 2023. (Tr. 973-1002). Plaintiff appealed, and the decision became final when the Appeals Council affirmed the ALJ's decision on October 29, 2025. (Tr. 965-971).

## II. The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one, the ALJ found that Plaintiff had not engaged in substantial activity since September 1, 2015, the alleged onset date. (Tr. 979).

At step two, the ALJ determined that Plaintiff has the following severe impairments: "osteoarthritis of the bilateral knees and right shoulder, status post total knee replacement of the right knee, chronic pain syndrome, obesity, hypertension, and affective mood disorder." *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). *Id.* at 980.

Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except

> the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ropes, ladders, and scaffolds. The claimant can frequently reach overhead with the right upper extremity. The claimant must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights. The claimant can perform simple, routine tasks, with no production rate for pace of work (e.g., assembly-line work).

*Id*. at 983.

At step four, the ALJ found that Plaintiff is unable to perform past work. *Id*. at 989. The ALJ reasoned that:

> The claimant has past relevant work as a babysitter (DOT #301.677-010, medium exertion performed at light exertion, SVP 3) and resident care aide (DOT #355.377-018, medium exertion performed at very heavy exertion, SVP 6 but at SVP 3 per vocational expert). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. At the hearing, vocational expert, Patricia Chilleri testified to the past relevant work mentioned above. Given the claimant's limitations, the demands of the claimant's past relevant work exceed her established residual functional capacity. Accordingly, the claimant is unable to perform her past relevant work as actually or generally performed.

*Id*. at 990. The ALJ determined that prior to the established disability onset date, "Plaintiff was a younger individual age 45-49." *Id*. However, Plaintiff's age category changed on July 16, 2019 "to an individual closely approaching advanced age." *Id*.

Finally, given Plaintiff's age, education, work experience, and RFC, the ALJ determined that prior to July 16, 2019, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id*. The ALJ determined that Plaintiff could perform the following jobs: "(1) final assembler, DOT #713.687-018 (6,000 jobs in the national economy); semiconductor bonder, DOT #726.685-066 (5,000 jobs in the national economy); and lamination machine tender, DOT #690.685-258 (7,000 jobs in the national economy)." *Id*. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, from November 15, 2022, through the date of his decision. *Id*. at 991. However, beginning on July 16, 2019, given Plaintiff's age, education, work experience, and RFC, the ALJ determined that, no jobs existed in "significant numbers in the national economy" that Plaintiff could have performed. *Id*.

Accordingly, the ALJ concluded that Plaintiff "was not disabled prior to July 16, 2019, but became disabled on that date and has continued to be disabled through the date of this decision." *Id*. at 992.

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock*

*v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ failed to properly consider the opinions of Plaintiff's "treating doctors, most importantly those of Dr. Joseph Hanna, thereby failing to "build an accurate and local bridge from the evidence to [his] conclusion."" (ECF No. 11-1 at 7) (quoting *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). For the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence. As such, I will remand the case.

### A. The ALJ's RFC Determination Must be Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "a proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

### B. The ALJ's RFC is Not Supported by Substantial Evidence Because He Erred by Failing to Give Greater Weight to Plaintiff's Treating Physician

As an initial matter, the courts evaluate and decide how to "weigh medical opinions

pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). Courts often assign ""greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). An ALJ is not mandated to conduct an express discussion of each factor. *See Howard v. Saul*, 408 F. Supp. 3d 721, 731 (D.S.C. 2019). The Court will not "disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' ...or has not given good reason for the weight afforded a particular opinion."" *Id.* at 731-732 (quoting *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998)). Persuasive contradictory evidence can impact the weight accorded to a treating physician's conclusions, *see Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 354 (4th Cir. 2023) (citation omitted), because "the treating physician rule is not absolute." *Hines v. Barnhart*, 453 F.3d 559, 567 n. 2 (4th Cir. 2006).

Here, the ALJ accorded partial weight to Dr. Hanna's conclusions which, in short, include prognoses of pain and difficulty walking, multiple temporary off work restrictions, and a note for ground floor accommodations and a motorized scooter. *See* (Tr. 985, 988). He reasoned that Dr. Hanna's opinions were temporary in nature, vague, and failed "to provide any specific limitations in vocational relevant terms to support Plaintiff's functioning." *Id*. The Court disagrees. The treating physician rule instructs that Dr. Hanna's opinion should have been given great or controlling weight because they are well-supported by clinical and laboratory diagnostic techniques. Additionally, substantial evidence does not support the ALJ's decision to accord partial weight to Dr. Hanna's opinion. His opinions are consistent with his *three years'* worth of treatment notes, other physician's medical findings, and Plaintiff's testimony.

The record supports the conclusion that Dr. Hanna's opinions were entitled to great or controlling weight. First, Dr. Hanna examined Plaintiff on multiple occasions. Second, Dr. Hanna treated Plaintiff from January 2016 to 2019. *See* (Tr. 435, 692). Dr. Hanna's conclusions are supported by medically acceptable diagnostic techniques as he performed, over the years, MRIs and ample medical testing including the Lachman's, McMurray's, and Apley compression tests. The results led Dr. Hanna to opine that Plaintiff had tears in both her knees, including a left knee posterior horn medical meniscus tear and a right knee complex meniscal tear, along with osteoarthritis. *See* (Tr. 434, 666). Dr. Hanna further noted, on multiple occasions, Plaintiff's pain, inability to work, and need for additional surgery. *See* (Tr. 609, 668-669, 770, 775, 777, 779, 782-784, 788, 790, 792-795).

As mentioned above, Dr. Hanna often opined that Plaintiff was unable to work, of which the ALJ relied on to accord partial weight to his conclusions. The SSA correctly points out that statements on issues reserved to the Commissioner are not medical opinions. 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). The SSA contends that Dr. Hanna's 'off-work notes,' fall squarely within 20 C.F.R. § 404.1527(d)(1). The SSA insists that the ALJ was correct to deem it "overly restrictive" and an "overstatement of the evidence," and that the

statement dooms Plaintiff's claim "that it should have been adopted wholesale by the ALJ." (ECF No. 17 at 12). The Court disagrees because Dr. Hanna's decision to restrict Plaintiff from performing any sort of work until further surgery was not a conclusory statement as discussed in 20 C.F.R. § 404.1527(d)(1), "but instead an assessment, based on objective medical evidence, of Plaintiff's likelihood of being able to sustain full-time employment" given her diagnosis. *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012); *see Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (finding that the ALJ's rejection of the treating physician's "four-hour [work] day restriction" was "wrong" because "medical opinions on how much work a claimant can do are not only allowed, but encouraged"); *see Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993) (Although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, ... he cannot reject them without presenting clear and convincing reasons for doing so." (internal quotation marks omitted.)). Accordingly, the ALJ does not provide adequate reasons for rejecting Dr. Hanna's 'off work' assessments, therefore, the ALJ erred in relying on them as a basis to deviate from Dr. Hanna's conclusions.

Next, Dr. Hanna's findings are not inconsistent with other substantial evidence, such as Plaintiff's other treating physicians. For example, Dr. Tannous diagnosed Plaintiff with "lumbosacral spondylosis, bilateral knee pain, and chronic pain syndrome." (Tr. 755). Dr. Tannous noted on multiple occasions from May 2019 to May 2020, that despite undergoing surgery, Plaintiff's pain was chronic and progressively worsening. (Tr. 864-870, 879, 885, 899, 946). Dr. Haana's and Tannous' opinions coincide as they both speak to the persistence of Plaintiff's chronic pain, and that fact that she would be "without relief" until further surgery. *See* (Tr. 694, 943) ("She continues to have pain and difficulty walking … because of the debilitating nature of her condition exacerbated by her secondary hip and back pain ….”). Dr. Hanna's pre- and post-knee surgery conclusions are also supported by Dr. Dipa Raval's and Ms. Sanghani's findings. *See* (Tr. 502-504, 508-511). An ALJ is not required to cite every piece of evidence in the file. *See* (ECF No. 17 at 15); *see Adrienne P. v. Kijakazi*, No. BPG-22-358, 2023 WL 2407394, at *2 (D. Md. Jan. 6, 2023) ("The failure to cite a specific piece of evidence is not an indication that the evidence was not considered."). However, based on the discussion above, it is unclear how the ALJ accorded the same "partial weight" to Dr. Clifford Hinkes, M.D., who conducted only two medical examinations in 2016, for the purpose of workers' compensation. *See* (Tr. 985). The Court notes the ALJ's reliance on Dr. Hinke to deviate from Dr. Hanna's conclusions and the absence of Plaintiff's other treating physicians who treated her continuing and persistent pre- and post-surgery condition. Accordingly, Dr. Hanna's opinions are not inconsistent with the record and Dr. Hinkes' conclusions do not constitute persuasive contrary evidence.

Dr. Hanna's conclusions are also consistent with Plaintiff's testimony. The ALJ found Plaintiff's testimony to be inconsistent with Dr. Hanna's conclusions because she reported, in May 2018, that she "volunteers at her church every Sunday serving breakfast and serving food to students at her daughter's school." (Tr. 987). Also, the ALJ further noted that in October 2021, Plaintiff reported "driving, caring for her own personal needs including bathing and dressing, grocery shopping, attending church regularly, and living independently with her 15-year-old daughter." (Tr. 989). Contrary to the ALJ's assertion, being able to volunteer a few hours a week and take care of oneself does not automatically translate to the ability to "sustain full-time work activity"— even if the work is 'simple' and completely sedentary. *Arakas*, 983 F.3d at 110 ("Being able to help out at her sister-in-law's restaurant for about 4 hours per week (and with significant

difficulty) in no way suggests that Arakas could sustain full-time work of 40 hours a week"); *see* SSR 96-8p, 1996 WL 374184, at *1; *see Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time."). Accordingly, the ALJ does not adequately explain with substantial evidence how the activities listed above contradict Dr. Hanna's conclusions and Plaintiff's other testimony that speaks to her chronic pain and inability "to bear any weight or stand or walk *too long*." (Tr. 987) (emphasis added).

Lastly, Dr. Hanna is a specialist in orthopedics. *See* (Tr. 770).

While the ALJ's decision contains reasons as to why he accorded Dr. Hanna's conclusions partial weight. The ALJ's reasons, are not based on persuasive contrary evidence and "did not merit a departure from the treating physician rule." *Howard v. Saul*, 408 F. Supp. 3d 721, 733 (D.S.C. 2019). Therefore, the Court cannot find the ALJ's decision to be based on substantial evidence "because the ALJ has not adequately explained the contradictions or inconsistencies between [Dr. Hanna's] opinion and evidence on which he relied." *Id*. The Court finds the ALJ's "mistreatment of the treating physician's opinion a sufficient basis to remand the case," thus, "the Court declines to specifically address Plaintiff's additional allegation of error by the ALJ." *Id*.

## V. Conclusion

In sum, the Court agrees with Plaintiff that the ALJ failed to give Plaintiff's treating physician's opinion great or controlling weight. The ALJ's reasoning is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED for further proceedings. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

___________/s/____________

J. Mark Coulson
United States Magistrate Judge